E. B. REEVES, Appellant, v. W. M. ST. PIERRE, Appellee.

Landlord and tenant: REFORMATION OF LEASE: SUFFICIENCY OF EVIDENCE. In this action for reformation of a lease for one year with a privilege of renewal, and to terminate the tenancy, the evidence is held insufficient to show that the instrument should have contained a provision making the extension of the term depend upon plaintiff's satisfaction with defendant as a tenant, but rather that she consented to the extension and later became dissatisfied and sought to oust him. Upon the whole case plaintiff was not entitled to reformation, or to double rental; that whatever right she had to object to the extension had been waived, and that defendant must be regarded as holding under the lease, by which the rights and liabilities of the parties must be determined.

*Appeal from Greene District Court.*—HON. F. M. POWERS, Judge.

SATURDAY, APRIL 11, 1914.

A SUIT in equity to reform a lease and to oust the defendant as tenant of the plaintiff thereunder. There was a decree dismissing the petition, and the plaintiff appeals.— *Affirmed.*

*C. C. Browning, J. A. Henderson,* and *B. I. Salinger,* for appellant.

*Howard & Sayers,* for appellee.

EVANS, J.—In August, 1909, the plaintiff executed a written lease of her certain farm to the defendant. The lease as written purported to be for "one year with privilege of five years," beginning March 1, 1910. The defendant went into possession of the farm on March 1, 1910, and con-

tinued in possession thereof up to the time of the beginning of this suit, which was October 12, 1911. The contention of the plaintiff is that there was a mutual mistake in the terms of the lease, in that the privilege of five years was to be conditioned upon her satisfaction therewith, and that such condition was, by mistake, omitted from the lease. Prior to their negotiations preceding the lease, the parties were strangers to each other, and this circumstance is consistent with the claim of caution on the part of the plaintiff, and affords corroboration to her. The lease was drawn by an experienced person, one Morris, who was usually employed by the plaintiff for the transaction of such business. The testimony of Morris corroborates that of the plaintiff, except that he contends that the lease was correctly written, and that it should be construed in accord with plaintiff's contention. The prayer of the petition is that the lease be reformed so as to reserve to the plaintiff the option to withhold consent to the extension after the first year, and that the defendant be decreed to be holding possession unlawfully since March 1, 1911, and that he be decreed as liable for double rental for such period under the statute, the lease providing for a rental of two-fifths of the crop and $200 for pasture. The defendant denies, both by his pleading and evidence, that any option was intended to be reserved to the plaintiff. He further pleads that in August, 1910, he exercised his option for an additional four years, and that the plaintiff expressly assented thereto. This allegation is supported by the testimony of the defendant and his wife, and is strongly corroborated by admitted circumstances, and by the testimony of the plaintiff herself. It appears, without dispute, that on August 3, 1910, the plaintiff agreed with the defendant to build a new house upon the farm, the old one being badly out of repair; that the defendant agreed with the plaintiff to haul all the lumber therefor free of charge, and to do certain other work thereon for compensation. The house was built, and the labor agreed on by defendant was

performed. It is also undisputed that up to that time the plaintiff was well satisfied with the defendant and with his farming, and that he had raised a fine crop. The only material difference between the testimony of the plaintiff and the defendant at this point is that the plaintiff contends that she agreed only to an extension for another year. Even this contention is qualified by the further statement that no mention of time was made. The following excerpts from her testimony as a witness will be sufficient to indicate her contention at this point:

I was satisfied with him as a tenant the first year. I have always said that defendant is a good farmer, but I don't know that he has farmed my place as good or better than any one else. I haven't been on the place since the house was finished. I promised him the place in July, and didn't get dissatisfied until after he paid the first note, on the 28th of February, because I didn't know he had sold so much corn. On the 3d of the next August, after he went on, I was on the place, and the crops looked good, and he bragged it up pretty high, and I told him he could have it another year.

I was entirely satisfied in August; the time for getting anything off the place not having yet arrived. He had tended the crop good, and it looked good, and no division of the crop had yet been made, and I didn't know but what he was absolutely honest. Of course, I gave him the right to stay there the second year. I know the lease was for another year. He would stay for another year. When I said to him he could have it another year, he said he wanted it, after having asked whether he could have it. I did not say on August 3d how long he was to have the place, nor the next year, nor the year coming. This talk in August was about August 3, 1910. On that day nothing had been said that he was claiming to have a five-year term, or an option of four years at his own choice. I don't know how that conversation came up. I forget things very quickly, anyway. The first I had talked about defendant's staying on the place another year was on that 3d of August.

This agreement of August 3d is avoided in plaintiff's reply pleading by an averment as follows: "Prior to the

—— day of July, 1912, and in the month of August, 1910, plaintiff told defendant that he could have the premises for an additional one year, and in the month of February, to wit, the 28th of February, 1911, defendant expressly stated to her that he would throw up the premises and surrender possession, to which plaintiff agreed, and that, notwithstanding said agreement, defendant continued to occupy and possess.''

The testimony of plaintiff in support of this averment is as follows:

He paid his first year's cash rent on February 28th. I suppose Exhibit 1 is the note, but I can't read it. Exhibit 2 must be the note he left with Morris. I got it along in July. I saw him February 28th, a year ago last February. He was in and paid the note. He had some charges against me, as for hauling for the building cement blocks and things for the cellar, and his work and his wife's work came to something like $118, and he took it out of the $200 note, and paid me the balance of the note on February 28th. After he paid this balance, I told him I wanted the paper made out so I could get my lease earlier, that I had not time if a tenant was dishonest, and he could get off the place without my knowing anything about it, and that I wanted my money earlier; and he said he wouldn't make it any earlier, that, if he couldn't have it to run until the 1st of February, he wouldn't have the place at all; and I said, 'All right;' and he jumped up and declared he wouldn't have the place, said there was a man living near Bagley that wanted him as a renter the worst kind, that he would go on to that place, and would not keep mine. He returned that day after the balance of the note had been paid, and wanted to know if I was willing to take the note until the 1st of February, and I said, 'No,' and he said, 'All right,' and skipped out. . . . He told me this time, on February 28th, that he would not make any other or different contracts with reference to the times of the payment than was made in this lease, but did not say he wouldn't do anything at that time that would break this contract; said nothing about breaking the contract. He jumped up as soon as I told him I was determined to have the notes earlier than the 1st of February, and declared that

he would not stay on the place any longer, but he did stay there on the place, and he did make the notes payable on the 1st of February, and I accepted them in July; and afterwards collected. . . . On February 28th is the time I wanted the notes made out, and he wouldn't accept it, and said he would throw up the place first. His wife was there with him, and we had settled that day, and they brought in all their accounts against me, and I settled with him on the notes, and I wanted the papers drawn up then, so I could get the notes earlier in the winter, and he flew mad and said he would throw up the place first.

In explanation of the foregoing testimony, it will be noted that the written lease provided for a money rent of $200, payable February 1st. So far as appears in this record, there was no requirement in the lease that a note be given therefor, but a note was, in fact, executed the first year, payable February 1, 1911, as provided in the lease. The insistence of the plaintiff, according to her own evidence, was that this provision should be changed, and that such rent should be paid on an earlier date. A part of her insistence was that there should be two notes of $100; the first payable about September 1st; and the other about January 1st. It is undisputed the defendant refused to accede to this change. He did offer his note payable according to the terms of the lease. On March 13th the plaintiff caused a written "notice to quit" to be served upon the defendant. This appears to have been abandoned later, and defendant's note was accepted on March 23d. Certain timothy seed was also furnished him to sow upon the place in pursuance of the previous oral agreement, and a certain "rider" was added to the lease in the hands of Morris, providing that the plaintiff should receive a two-fifths share of the timothy hay to be raised from the seed sown. Notwithstanding all this, this action was brought in October, 1911, to reform the lease, and to terminate it as of March 1, 1911, and to treat the defendant as unlawfully holding over, and to charge him with double rent, and all on the ground that the plaintiff

was not then satisfied with the defendant as a tenant; and
this while admitting that she was once satisfied, and that,
while so satisfied, she had agreed to an extension for at least
one year.

It will be readily seen from the foregoing statement
that the question whether there was a mistake in the original
lease in omitting the reservation of the option to the plain-
tiff has become quite immaterial. Even if the fact were so
found in favor of plaintiff, the fact still remains that the
plaintiff expressly consented to the extension. If, therefore,
the lease had been written as plaintiff contends it should
have been written, the agreement of August 3, 1910, would
have to be construed with reference thereto. We think the
clear preponderance of the evidence shows that the agree-
ment of August 3d contemplated the exercise of the privilege
of five years, as provided in the lease. The plaintiff con-
sented to it while believing that she had a right to refuse, and
she accepted from the defendant his offered contribution of
labor to the building of the house. The defendant also did
twenty-five or thirty acres of fall plowing, which was pre-
sumably within the contemplation and observation of the
plaintiff. The plaintiff has testified with much candor. She
is an old lady more than eighty years of age. She is mani-
festly intelligent, but admittedly forgetful, as is natural for
her years. The theory which seems to have obtained in her
own mind is that, even though she consented to the extension
while satisfied with the defendant as a tenant, her subsequent
dissatisfaction entitled her to withdraw such consent. Of
course, her counsel would not advance such a theory, but it
runs through the testimony of the plaintiff herself.

The agreement to surrender the lease which is pleaded
in plaintiff's reply is not supported by the evidence. Not
only is it denied by the defendant, but plaintiff's own testi-
mony, as above set forth, would not establish it if it stood
alone.

The petition alleged some facts in justification of plain-

tiff's dissatisfaction, and considerable evidence is directed thereto, and still to other similar events not pleaded which may have occurred since the beginning of the suit. It is claimed that the defendant failed to deliver to the plaintiff her full share of corn for the year 1910. The evidence deals also with the crop share of 1911, which was still on the field when this action was commenced. There was serious personal friction between the defendant and some of the plaintiff's agents. It should be said that the defendant's conduct was not justifiable. It is argued that such conduct of itself was a breach of the lease and justified its cancellation. No such ground however, was laid in the petition for a cancellation of the lease. The plaintiff has three daughters and three sons-in-law. Most of these, and perhaps all of them, acted as agents for her in dealing with the defendant. Their authority was not always free from doubt in the mind of the defendant, because he had been assured by the plaintiff that she herself would attend to her own business. In any event, it was not advantageous or conducive to harmony to use so large an army in transacting the same business; and the versatility of the defendant was not equal to the strain. As to whether the defendant delivered to the plaintiff her fair share of the corn, the evidence is confusing and unsatisfactory on both sides. It is contended by appellee in an amended abstract that the appellant has omitted from the record the certain book or books of the defendant wherein he kept an account of the corn harvested by him, but the book is not set out in the appellee's abstract. On the other hand, the appellant contends in an additional abstract that, though such book was identified, it was not introduced in evidence. Plaintiff, however, does not ask in this action to recover as for conversion of the corn, and we have no occasion to consider the defaults of the defendant in this respect, except in explanation or justification of plaintiff's dissatisfaction with him as a tenant.

What we hold is that the plaintiff is not entitled to relief

by way of reformation of the lease; that she is not entitled to recover double rental; that by the agreement of August 3, 1910, she waived the right to object to the defendant's exercise of the privilege of five years, if any such right she had in the original negotiations; that the defendant must be regarded as holding under the lease, and the rights and liabilities of the parties must be determined according to its terms.

The trial court dismissed her petition, and such order is accordingly—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.